## Case No. 9,503.

### The METROPOLIS.

[9 Ben. 83.][1]

District Court, E. D. New York. March, 1877.

MARITIME LIEN—PRESUMPTION OF CREDIT — BURDEN OF PROOF.

1. Where necessary supplies, furnished to a foreign vessel, were procured by a steward, authorized to get them but appointed by a railroad company then using the boat: *Held*, that the owners, by permitting the appointment of the steward with authority to procure supplies, must be considered to have consented that supplies be procured in the ordinary way, upon the credit of the vessel;

2. That on the question of fact whether the supplies were furnished upon the credit of the vessel, the burden is upon the claimants, the presumption being that necessary supplies are ordered upon such credit.

The Narragansett Steamship Company, owning several vessels, made an arrangement with the New Jersey Southern R. R. Co., for the use of their boats to run from Sandy Hook to New York, when required, and, carry the railroad company's passengers at so much per day, the railroad company to furnish supplies, materials and crew. Thereupon the railroad company put a steward on the Metropolis, one of the Narragansett Co.'s steamboats, to keep and supply a restaurant on board, who bought supplies, the requisition being made out "The New Jersey Southern Railroad Company, to James M. Fuller, Dr.;" which were delivered on board and used on the boat, in the restaurant. Fuller and Derry, another contractor, furnished supplies, also, to four other steamboats under the same arrangement and circumstances; and the railroad company having become insolvent and passed into the hands of a receiver, actions were brought to enforce liens upon all the vessels, but only one set of proofs was taken, applicable to all the cases. Opinions were rendered and final decree made in all the cases; but the facts being the same, only this one and the case of The Long Branch [Case No. 8,484] are reported.

Beebe, Wilcox & Hobbs, for libellants.

Shearman & Sterling, for claimants.

BENEDICT, District Judge. This is an action to enforce a lien against the steamboat Metropolis for provisions supplied to that vessel during the months of July and August, 1873, at the city of New York. The libel avers that the provisions in question were necessary for the vessel in her employment, and were furnished upon the credit of the vessel, she being a foreign vessel.

The claimant of the vessel is the Narragansett Steamship Company, which sets forth by way of defence that the supplies in question were furnished to, on the order and solely on the credit of the New Jersey Southern Railroad Company, and no lien upon the vessel was created thereby.

The evidence shows that the work in question was ordered by the master of the vessel, whose authority to give the order has not been disputed. The vessel was a foreign vessel, being owned by the Narragansett Steamship Company, a foreign corporation. The president of this corporation was Jay Gould, who was also the president of the New Jersey Southern Railroad Company, at this time operating a railroad from Sandy Hook, Long Branch and Philadelphia, and running in connection with the railroad a line of steamboats from Sandy Hook to the city of New York, a distance by water of some twenty miles.

Between these two corporations the proofs show an arrangement to have existed, that the steamboats of the Narragansett Steamship Company should run for the New Jersey Southern Railroad Company, on their route from and to Sandy Hook, as they might be wanted by reason of accident to the boats of the railroad company, or other necessity. This arrangement was verbal, for no definite period of time and for no particular days or specified voyages. The railroad was to pay for the use of the boats by the day when they were used. The price for the Metropolis, when used, was $100 per day, the railroad company to furnish the supplies, materials, and crews.

By virtue of this agreement, the Metropolis made various irregular trips on the route between Sandy Hook and New York, making in all eighty-three days during the season of 1873.

It may perhaps be assumed—unless some evidence has escaped my attention, owing to the confused and improper method adopted in taking the testimony of five different cases all together—although the evidence hardly proves the fact, that the provisions in question were to enable the boat to make one or more of these trips between Sandy Hook and back. If so, according to the arrangement between the two companies, as between the railroad company and the Narragansett Steamship Company, the expense of these provisions was to have been borne by the railroad company. The provisions were ordered by the steward of the boat, appointed by, and acting under the authority of the railroad company, and were delivered on board of and used by the boat. The requisi-

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

tion for the articles was headed, "New Jersey Southern Railroad Company, Steamer Metropolis, received from James M. Fuller," &c., &c.

The authority of the steward to procure these supplies is not disputed, but it is contended that as he had authority to order for the New Jersey Southern Railroad Company alone, and not for the Narragansett Steamship Company, his acts created no lien upon the boat, but simply charged the railroad company. My opinion is otherwise.

If the arrangement between the two companies was such as to constitute the railroad company owners for the voyage and transfer to them the possession and control of the vessel, then the power to bind the vessel for necessary supplies became vested in the railroad company, and the vessel would be bound by their contract for necessary supplies, provided the same were furnished upon the credit of the vessel. If, on the other hand, the effect of the arrangement between the two corporations was not to transfer the possession and control of the vessel to the railroad company, and the agreement was simply on the part of the owners of the vessel to perform certain voyages, and on the part of the railroad to pay a certain compensation for that service so rendered by the ship owner, still the vessel would be liable for supplies used by her in the performance of that service, provided the same were furnished upon the credit of the vessel.

When the owners of the boat permitted the railroad to place on board this boat a steward, with authority to procure the provisions necessary for the boat, they permitted the boat to be charged by the steward so appointed and authorized for necessary supplies so procured.

It is well known that the duty of procuring supplies of the character in question for vessels of this description in many if not in most cases devolves upon a steward or manager, who, in this particular, is the representative of the owner. The owners of this vessel when they made this arrangement with the railroad company not only knew that supplies must be procured for the vessel to enable her to perform the service it was intended she should perform, but they must also be taken to know that the steward they permitted to be appointed to the vessel would, in the ordinary course of business, be authorized to procure such supplies of this character as the vessel might need.

The ordinary method of procuring supplies for a foreign vessel, is upon the credit of the vessel. The owners of this boat are to be considered as having contracted that the vessel's necessary supplies should be procured in the ordinary manner of procuring such supplies, and cannot be permitted to say that they did not suppose that the vessel would be charged with a lien. When, then, it is made to appear that the supplies were necessary, and were in fact used on board the vessel, and that they were procured by the officer whose ordinary duty it is to procure such articles, and that such officer was authorized to procure the same, a case is made where the vessel herself is charged with a lien, provided the supplies were procured upon the credit of the vessel. The liability of a foreign vessel for supplies, arises out of the fact that the supplies are used on board the vessel to enable her to make voyages and earn freight, and the further fact that the supplies are procured upon the credit of the vessel by a person duly authorized to procure the same. A vessel sailed on shares by her master is held bound for supplies procured by the master, notwithstanding the fact that as between the master and owners the master alone is to furnish the supplies.

So in the case of The City of New York [Case No. 2,758], where the vessel was chartered and coal was ordered by a purser employed by the chartered vessel, she was held liable when the fact was proved that the coal was furnished upon the credit of the boat.

In this view of the law the decision of this case must depend upon the question of fact, whether the provisions in question were furnished upon the credit of the boat. If they were so furnished, the boat and also the railroad company became bound therefor. If they were not so furnished the railroad company alone is bound.

Upon this question the burden is upon the claimant. When one authorized to procure supplies for a foreign vessel, orders supplies for the vessel, that are used by the vessel and necessary therefor, the presumption arises that they are furnished upon the credit of the vessel (Insurance Co. v. Baring, 20 Wall. [87 U. S.] 159), and the necessity for the credit of the vessel is shown by proof of the necessity of the supplies for the use of the vessel (The Grapeshot, 9 Wall. [76 U. S.] 138).

The present case is relieved of all difficulty upon the question to whom credit was given, by the circumstance that facts precisely similar to those here made to appear as bearing on the question whether credit was given to the vessel, were shown in an action brought by this same libellant against the steamboat Plymouth Rock, a vessel running on the same route, and were in that case found, not only by this court, but also by the circuit court upon appeal, to be insufficient to justify holding that the supplies were furnished solely upon the credit of the railroad. The two cases are alike except that in the case of The Plymouth Rock the railroad company was the actual owner of the vessel, while in this case they were using the boat of another under the arrangement which has been described. That fact, as has been shown, does not, in a case like this, affect the question of the liability of the vessel when once the credit of the vessel is found to have entered into the contract as an element thereof.

I have been referred by counsel to a case decided by the district court for the Southern district of New York, where in an action against this same boat by a different libellant upon similar facts, a different conclusion was arrived at. I presume the case alluded to was determined before the decision of the circuit court in the case of The Plymouth Rock [Case No. 11,237], had been promulgated. The decision of the appellate court in the case of The Plymouth Rock is decisive of the question of credit in this case, and compels a decision in favor of the libellant.